**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| BRADFORD CANNON, | : | |
| | : | |
| Petitioner, | : | Civil No. 08-4514 (RMB) |
| | : | |
| v. | : | |
| | : | |
| WARDEN PAUL SCHULTZ, | : | **O P I N I O N** |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    BRADFORD CANNON, Petitioner pro se
    #38036-054
    Federal Correctional Institution Fairton
    Fairton, New Jersey  08320

**RENÉE MARIE BUMB, District Judge**

    On September 10, 2008, Petitioner BRADFORD CANNON ("Petitioner") currently confined at Federal Correctional Institution Fairton, Fairton, New Jersey ("Facility"), filed his 28 U.S.C. § 2241 petition ("Petition").  See Docket Entry No. 1. Petitioner failed to submit his filing fee or his application to proceed in forma pauperis.  See id.  The Petition is challenging the results of Petitioner's prison disciplinary proceeding.  See id.

I.      **Standard of Review**

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

A court presented with a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person confined is not entitled thereto."  28 U.S.C. § 2243.  Thus, "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."

McFarland, 512 U.S. at 856; see also Lonchar v. Thomas, 517 U.S. 314, 320 (1996); United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir.), cert. denied, 490 U.S. 1025 (1985).

**II.   Background**

According to the Petition, on January 23, 2008, around 5:00 p.m., Petitioner used a communal restroom at the Facility. Upon leaving the restroom, Petitioner was stopped by two corrections officers employed at the Facility. See Docket Entry No. 1, at 10. The corrections officers requested inspection of the content of Petitioner's pockets, and Petitioner complied. His inspection revealed--according to the Petition--ten books of stamps and a "bugler rolling tobacco smoking paper." Id. at 10-11. Upon discovery of the smoking paper, the officers conducted a search of Petitioner's cell, finding in Petitioner's locker twelve more books of stamps, 38 Tootsy Pop candies and a notebook with basketball game scores for the period of 2005-2007. See id at 11. Petitioner presented the officers with a receipt for the candies and notified the officers that the notebook entries were not gambling-related. See id. The search, seemingly, ended at 5:15 p.m. See id. at 12.

Around 7:00 p.m. of the same day, Petitioner was summoned to the office of Lieutenant Atkinson, a supervising prison official. Lieutenant Atkinson read Petitioner an incident report; the report

stated that Petitioner was stopped by the corrections officers in the restroom while Petitioner was in possession of stamps, smoking paper and three small containers of marihuana.[1]  See id. at 13.  In response, Petitioner stated that he did not "deal marihuana" and demanded an urinary test, which was conducted and produced a negative result.  See id. at 13-14.  According to the Petition, Petitioner was transferred to the Special Housing Unit ("SHU") at 8:40 p.m. of the same day.  See id. At 14.

The Petition does not elaborate on the actual date or events of Petitioner's disciplinary hearing.  See generally, Docket Entry No. 1.  However, it appears that, about four days later, Petitioner's hearing was held before a Unit Disciplinary Committee ("UDC"), and Petitioner was sanctioned to six months of loss of visitation privileges and, in addition, to forty days disallowance of good-time credit.  See id. at 15.  The disciplinary violation was entered into Petitioner's prison record.  See id.

Petitioner asserts that the disciplinary hearing violated his rights because: (a) the UDC hearing was held 100 hours after Petitioner's transfer to the SHU, rather than 72 hours after the transfer, as directed by a certain Bureau of Prison's ("BOP") regulation; (b) "Petitioner was not provided notice of the charge

---

[1] Petitioner asserts that the report was not in conformance with a certain code of the Federal Bureau of Prisons, and that the report was numerously amended by Lieutenant Atkinson as it was read to Petitioner.  See Docket Entry No. 1, at 13.

Page -4-

in a timely manner in advance of the UDC hearing"; and (c) "Petitioner was not afforded the opportunity to call witness[es]"; and (d) "Petitioner was not afforded the opportunity to produce documentary evidence, such as pay-roll work sheet."[2]  See id. at 14-15.  Petitioner does not dispute that both corrections officers either executed reports (or executed reports and also testified during Petitioner's administrative hearing) that Petitioner was in possession of three small containers of marihuana when he was apprehended in the restroom.

Petitioner requests restoration of his visitation privileges, expungement of his record and restoration of 40 days of good-time credit.  See id. at 15.

### III. Discussion

    A.    **Visitation Privileges**

Federal law provides two avenues of relief to prisoners: a petition for habeas corpus and a civil rights complaint.  See Muhammad v. Close, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its

---

[2] It appears that Petitioner suggests that, had he been actually in possession of marihuana, the corrections officers would have seized him immediately rather than allow him to proceed with his work chores for an hour and forty-five minutes, that is, until he was summoned to the office of Lieutenant Atkinson.  See id.

duration are the province of habeas corpus[3] . . . [while] requests for relief turning on circumstances of confinement [fall within the realm of] a § 1983 action." Id. (emphasis removed).  As § 1983 action applies only to state actions, it is not available to federal prisoners; the federal counterpart is an action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), alleging deprivation of a constitutional right. See Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3d Cir.2001) ("A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law").

The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas"-the validity of the continued conviction or the fact or length of the sentence-a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

---

[3] A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, see Preiser v. Rodriquez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, see Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997); accord Wilkinson v. Dotson, 544 U.S. 74 (2005).

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir.2002).

Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005).  In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy.  See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3d Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3d Cir. 2002) (habeas relief is unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in properly filed civil rights complaint).

In light of the foregoing, it appears apparent that this Court is without jurisdiction, under Section 2241, to entertain Petitioner's challenges as to his loss of visitation rights.  These challenges, therefore, will be dismissed without prejudice to Petitioner's bringing an appropriate Bivens action.

**B.     Expungement of Record**

The only case in this Circuit on the issue of expungement is Williams v. Federal Bureau of Prisons, 85 Fed. App'x 299 (3d Cir. 2004), a case decided before the Supreme Court's ruling in Wilkinson v. Dotson, 544 U.S. 74.

In Williams, the inmate-petitioner filed a pro se § 2241 habeas petition claiming that federal officials had improperly refused to delete false information contained in his prison file. See id. at 303.  Examining that petition, the magistrate judge employed the rationale later articulated by the Supreme Court in Wilkinson and "concluded that, since [the inmate's] habeas claims did not challenge the length of his confinement, the habeas petition [had to] be construed as a Bivens action."  Id.  The district court adopted the magistrate judge's conclusion and, eventually, dismissed the petition.  See id.  The inmate appealed.

Addressing the issue, the Court of Appeals observed as follows:

> We have never had to decide whether to endorse the right
> of expungement announced in Paine v. Baker, 595 F.2d 197
> (4th Cir.1979), and other Circuit Courts of Appeals have
> expressly questioned its precedential value.   [See]
> Johnson v. Rodriguez, 110 F.3d 299, 308-09 n. 13 (5th
> Cir. 1997).   Nevertheless, [the inmate in Williams]
> argues that his . . . prison file expungement claim are
> meritorious under Paine v. Baker.  There, the Court of
> Appeals for the Fourth Circuit announced that, in limited
> circumstances, state prisoners have a federal due process
> right to have "prejudicial erroneous information expunged
> from their prison files."  [See Paine,] 595 F.2d at 202.
> The court held:

> In certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree.
>
> Id. at 201. [The inmate now] argues that he can assert Paine v. Baker expungement claims in a § 2241 habeas petition. Even if we assume arguendo that [the inmate] can assert a Paine v. Baker expungement claim in a § 2241 habeas petition, it is nevertheless clear that he is not entitled to relief [of expungement of] his prison file [where the information on file is an opinion implicating no liberty interests].

Williams, 85 Fed. App'x at 303.

The Court of Appeals' use of the "arguendo" language, read in light of the Supreme Court's later decision in Wilkinson (as well as in light of the Third Circuit's decisions in Ganim, 235 Fed. App'x 882, and Bronson, 56 Fed. App'x at 553-54) indicates that an expungement claim falls outside § 2241 jurisdiction and has to be raised in a Bivens action, since expungement per se does not affect the prisoner's duration of confinement.[4] This Court, therefore, will dismiss Petitioner's expungement challenges without prejudice to Petitioner's bringing an appropriate Bivens action challenging the entry in his prison record.

---

[4] In contrast, the consequences of the finding of a disciplinary violation (i.e., Petitioner's loss of his good-time credit) is properly raised in this habeas action, since this disciplinary finding prolonged Petitioner's term of confinement.

C.   **Restoration of Good-Time Credit**

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. . . . In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[5] "the prisoner's interest has real substance and is sufficiently embraced

---

[5] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, see id. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body." Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974). To comply with the requirements of the Due Process Clause, prison officials must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. See Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. See id. at 569-70. Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. See Superintendent, Massachusetts

Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).

Here, the record attached by Petitioner makes it clear that Petitioner was duly informed that his disciplinary sanctions were imposed on the basis of the statements executed by the corrections officers, who reported stopping Petitioner while he was in possession of marihuana. Similarly, Petitioner's claim that he was not notified about the charges against him in a "timely" fashion is in direct contradiction with his own assertion that Lieutenant Atkinson informed him, about 100 hours prior to the administrative hearing, that he is being charged with possession of marihuana. Moreover, the fact that Petitioner's UDC hearing took place about 28 hours later than what is envisioned by a BOP's regulation does not violate the standard set forth in Wolff. Finally, since Petitioner does not dispute that both corrections officers provided evidence asserting that Petitioner was stopped while in possession of marihuana unambiguously indicates that there were "some evidence" supporting the disciplinary finding.

It follows, therefore, that the only potentially viable claim asserted by Petitioner relates to his alleged inability to call witness(es) and/or present documentary evidence. However, Petitioner's assertions that he was not allowed to call a witness of his choice or to present documentary evidence are factually ambiguous. See Docket Entry No. 1, at 15. His allegation allows

for two interpretations: (1) that Petitioner informed the prison officials of his intentions to call a witness and to present documentary evidence right prior to his disciplinary hearing; or (2) that Petitioner made his request well in advance of the hearing.  The former scenario invites an inquiry as to whether Petitioner was duly notified about his right to call witnesses and present documentary evidence, while the latter invites a different inquiry, <u>i.e.</u>, whether the denial of Petitioner's request was made arbitrarily or for a legitimate reason to avoid an undue hazard to institutional safety or to correctional goals.[6]  Since the statements made in the Petition prevent the Court from ascertaining the gist of Petitioner's allegations with a sufficient degree of certainty, the Court will allow Petitioner an opportunity to file an amended petition detailing his allegations as to the denial of an opportunity to call a witness and present documentary evidence.

**IV. <u>Filing Fee or Application to Proceed *In Forma Pauperis*</u>**

The "revised [Habeas] Rule 3(b) requires the [C]lerk to file a petition, even though it may otherwise fail to comply with [Habeas] Rule 2.  The [R]ule . . . is not limited to those

---

[6] Moreover, the statements made in the Petition do not allow the Court to rule out a scenario where Petitioner was duly informed that he may seek to call witnesses of his choice or introduce documentary evidence, but failed to notify the prison officials of his intent to do so until the administrative hearing was actually held.

instances where the petition is defective only in form; the [C]lerk [is] also required . . . to file the petition even though it lack[s] the required filing fee or an in forma pauperis form." 28 U.S.C. § 2254, Rule 3, Advisory Committee Notes, 2004 Am.

However, Section 1914, the filing fee statute, provides in relevant part that "the clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $ 350 except that on application for a writ of habeas corpus the filing fee shall be $ 5." 28 U.S.C. § 1914(a). The accompanying provision, Section 1915, governs applications filed in forma pauperis and provides, in relevant part, that leave to proceed in forma pauperis may be granted in any suit to a litigant "who submits an affidavit that includes a statement of all assets such [litigant] possesses [if such affidavit demonstrates] that the [litigant] is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); see also Smith v. Bennett, 365 U.S. 708, 712, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961) ("[W]hile [$ 5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$ 500]"); Clay v. New York Nat'l Bank, 2001 U.S. Dist. LEXIS 3209, at *1 (S.D.N.Y. Mar. 21, 2001). Therefore, regardless of whether or not Petitioner files an amended petition, Petitioner must submit his filing fee of $ 5 or his affidavit of poverty. Cf. Kemp v. Harvey, 2006 U.S. Dist. LEXIS 8939, at 18 n.6 (D.N.J. Mar.

3, 2006) (observing that "it would be indeed anomalous to allow persons [stating no cognizable claim] to usurp judicial resources and bring claims without payments while obligating every litigant [stating a cognizable claim] to pay the fee").

## V. Conclusion

For the foregoing reasons, Petitioner will be directed to file an amended petition and submit his filing fee or an application to proceed in this matter in forma pauperis.

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb<br>
**RENÉE MARIE BUMB**<br>
**United States District Judge**

Dated: September 29, 2008