**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____

_____
                                          :
BRADFORD CANNON,                          :
                                          :
              Petitioner,                 :        Civil No. 08-4514 (RMB)
                                          :
         v.                               :
                                          :
WARDEN PAUL SCHULTZ,                       :        **O P I N I O N**
                                          :
              Respondent.                 :
_____     :


        This matter comes before the Court upon the parties'
submission of supplemental briefs in accordance with the Court's
prior order.

**I.    BACKGROUND**

        On September 10, 2008, Petitioner filed his original <u>habeas</u>
petition alleging that the disciplinary hearing he received
violated his due process rights, challenging the resulting
sanctions, seeking expungement of his prison record and
restoration of his visitation privileges and good-conduct
credits. <u>See</u> Docket Entry No. 1.  On September 29, 2008, this
Court issued an order and accompanying opinion dismissing,
without prejudice, Petitioner's civil rights claims and directing
Petitioner to file an amended petition with regard to the issue

of his good-conduct credits.   <u>See</u> Docket Entries Nos. 2 and 3.

On October 31, 2008, the Clerk received Petitioner's amended petition, and Respondent's answer followed.   <u>See</u> Docket Entries Nos. 4 and 7.   Upon receipt of Respondent's answer, Petitioner duly filed his reply.   <u>See</u> Docket Entry No. 8.

The gist of Respondent's answer was as follows: On January 23, 2008, two prison officials noticed a smell of smoke from one of the prison bathrooms and, upon entry into the bathroom, met Petitioner who was stopped and searched by these two officials. Respondent maintained that the search produced 22 books of stamps, an altered AA battery and a pack of rolling papers inside which there were three yellow pieces of folded paper filled with a green leafy substance that eventually was established to be marijuana.   The prison officials prepared statements as to the circumstances and the outcome of the aforesaid search, and – on the basis of these statements and produced physical evidence – Petitioner was charged with various disciplinary infractions.   On February 27, 2008, Petitioner's administrative hearing was held. Five days prior to the hearing, Petitioner expressed interest in calling, as his witness during the hearing, a certain inmate referred to as "Coleman." According to Respondent, Coleman's first name and prison identification information were not provided by Petitioner to the prison officials, and Respondent maintained that – at a later date – Petitioner orally waived his

request to call Coleman as his witness.  The hearing resulted in various administrative sanctions imposed upon Petitioner, one of these sanctions was Petitioner's loss of a certain amount of his good-conduct credits.  See Docket Entry No. 7, at 17-22, 27-28.

Respondent asserted that the prison officials' administrative findings as to the propriety of Petitioner's sanctions were supported by, at least, some evidence (seemingly, the physical evidence and the statements of the prison officials who searched Petitioner in the bathroom).  Respondent also asserted that the fact of Petitioner's waiver of calling Coleman as his witness verified proper due process of Petitioner's administrative hearing (that is, in the event the propriety of the process would be questioned in light of Petitioner's assertion that he was initially interested in calling Coleman as his witness).

Alternatively, Respondent asserted that, even if Petitioner did not waive his opportunity to call Coleman as his witness, Respondent was not obligated to allow Petitioner that opportunity since: (a) Coleman's testimony would have been limited to the fact that, a few hours after Petitioner had been apprehended by the prison officers in the bathroom, Petitioner and Coleman were removed from their prison cell for the purposes of a cell search; but (b) the fact of that cell search could not have had any relevance to the determination of what items were found (or not

found) in Petitioner's possession as a result of his bathroom search a few hours prior.  See id. at 17-33.  In addition, Respondent asserted that Petitioner had an ample opportunity to submit any documentary evidence, if he so wished, but he elected not to do so.  See id. at 28-29.

In his amended petition and traverse, Petitioner did not dispute the fact that he was apprehended in the bathroom being in possession of a pack of rolling paper (and, seemingly, of an altered AA battery).  However, same as during his administrative hearing, Petitioner asserted in  his amended petition and traverse that he was apprehended being in possession of only 10 books of stamps (rather than 22 books of stamps)[1] and that he was not in possession of *any* controlled substance; these assertions were challenges to substantive administrative determinations. See Docket Entry No. 8.  The only relevant due process points made by Petitioner were his allegations that he was denied an opportunity: (a) to call Coleman as a witness; and (b) to present

---

[1]

Petitioner maintained that the remaining 12 books of stamps were shown to be in his possession when his cell was searched (that is, after his bathroom search).  Respondent pointed out that the discrepancy in the account was irrelevant to the issue of disciplinary violation based on Petitioner's possession of the stamps, since: (a) for the purposes of a discipline, the term "possession" means possession on an inmate's person and in the inmate's cell, collectively; and (b) any possession of more than 60 stamps qualifies as the violation with which Petitioner was charged, and 60 individual stamps are the amount smaller than 10 books or 12, or 22 books.  See Docket Entry No. 12, at 6.

certain documentary evidence.

    With regard to that aspect, Petitioner asserted that he did not waive his right to call Coleman as his witness, and lack of his formal waiver verified the truthfulness of his position.  See id., at 2-3.  Moreover, Petitioner asserted that he sufficiently identified Coleman by designating Coleman as Petitioner's cell-mate, by giving the prison officials Coleman's "bed-bunk" number,[2] and by providing all other relevant information as to Coleman.  See id.  However, Petitioner's position that Coleman's testimony would be helpful to Petitioner's cause appeared unfounded, since: (a) according to his amended petition, Petitioner's explanation given to his prison officials (as to why he wished to call Coleman as his witness) was limited to a single sentence: "Petitioner explained that Mr. Coleman was one of the people who were throw[n] out of the [cell] along with [Petitioner few hours after the incident in the bathroom]," Docket Entry No. 4, at 20; and (b) Petitioner's explanation given to this Court as to why Petitioner believed that his due process rights were violated by Coleman's absence was limited to the following

---

    [2] In light of the fact that Petitioner gave the prison officials Coleman's last name and "bed-bunk" number, this Court – even assuming Petitioner's failure to provide his prison officials with Coleman's first name and prison identification number – agreed with Petitioner's point that the information undisputably given to prison officials by Petitioner was sufficient to render the task of locating Coleman not unsurmountable.  See docket Entry No. 9, at 5 and n.4.

hypothetical: "if [P]etitioner's witness [were] called, [the officers presiding over Petitioner's administrative hearing] would have had the chance to question Mr. Coleman [as] to any discrepancies [about what] happened."  Docket Entry No. 8, at 4.

Hence, Petitioner's amended petition and traverse seemingly validated Respondent's assertion that Coleman's testimony would have been irrelevant (since that testimony could not have included any factual information as to whether Petitioner was apprehended during the bathroom search while in possession of contraband).  In other words, as drafted, Petitioner's amended petition and traverse asserted Petitioner's belief that: (a) had Coleman testified, he would have testified to unrelated events that took place hours after the bathroom search at issue; but (b) the mere discrepancies (between Coleman's testimony about these unrelated-to-the-bathroom-search events and the testimonies about the same unrelated events by the officers who conducted Petitioner's bathroom search) might have allowed Petitioner to avoid disciplinary sanctions.[3]  Petitioner's submission did not

_____

[3] I.e., Petitioner's amended petition and traverse suggested Petitioner's belief that the officials conducting his administrative hearings would: (a) initially deduce from the discrepancies between Coleman and the officers' accounts as to the unrelated-to-the-bathroom-search events that the officers were lying about these events, and (b) then deduce from that prior deducement that the officers must be lying about everything (perhaps, under the theory of "once a liar, always a liar"), including about the circumstances associated with the officers' bathroom search of Petitioner.

clarify what particular documentary evidence Petitioner sought but was denied an opportunity to present nor explained what facts relevant to the actual infraction at issue this evidence could have established.

Consequently, Petitioner's amended petition and traverse provided this Court with no grounds for granting a writ. However, upon examination of the statements and records submitted as part of Respondent's answer and Petitioner's amended petition and traverse, this Court concluded that it would be imprudent to exclude the possibility that Petitioner, if granted one more opportunity to elaborate on his position, might be able to establish a valid due process claim as to the alleged denial of the opportunity: (a) to call Coleman as Petitioner's witness; and (b) to present factually relevant documentary evidence. Therefore, the Court directed both parties to submit supplemental briefs addressing these issues. See Docket Entry No. 9.

Both sides duly complied. See Docket Entries Nos. 11, 12 and 15.

Respondent's position, restated and further detailed in Respondent's supplemental brief, is as follows:

> Even assuming Petitioner had not waived the right to call [Coleman as his] witness, the DHO would [not have violated Petitioner's due process rights had the DHO] excluded the witness because his testimony would not have been relevant to the issues [of] the contraband Petitioner possessed. . . .  Coleman's testimony would not discredit the reporting officer's statements, nor would Coleman's testimony exculpate Petitioner.

. . .
[Similarly,] Petitioner was not denied the right to
present documentary evidence at his DHO hearing.
Petitioner never offered any documentary evidence to
the DHO. . . . The DHO attests that Petitioner never
provided any documentary evidence to him, which is
confirmed by the absence of any notation on the DHO
report to documents provided by Petitioner.  Moreover,
the Court ordered Petitioner to detail the statements
he made to prison officials in relation to his request
to present documentary evidence in his supplemental
petition.  That he has failed to do.  Instead,
Petitioner identified documents that did not exist at
the time of the DHO hearing (i.e., administrative
remedy records, DHO hearing records) in an effort to
discredit the reporting officer. [Petitioner] has
offered no evidence whatsoever that he was not
permitted to present documentary evidence.
. . .
[Finally], the DHO's decision [was] supported by "some
evidence."  The DHO had before him the incident report,
which included the reporting officer's description of
the incident; the investigation; a photocopy of the
picture showing the test kit, the rolling papers, the
books of stamps, and three small pieces of paper
containing the green leafy substance; the memorandum
from the other staff member present at the search
explaining the incident; and the Lieutenant's
memorandum explaining the testing procedure and the
positive test result for the marijuana.  The DHO also
considered Petitioner's various statements, including
Petitioner's admission to having the stamps, the
battery, and the rolling papers, and his denial that he
did not "deal" marijuana.  As the finder of fact, the
DHO is authorized and obligated to exercise his
judgment in assessing the credibility of witness
testimony.  The DHO found the employee witnesses to be
more credible than Petitioner, who had everything to
gain by having the charge against him expunged.

Docket Entry No. 12, at 2-12 (relying on <u>Santiago v. Nash</u>,

224 Fed. App'x 175 (3d Cir. 2007).

     Petitioner's position, stated in his supplemental brief and

an addendum to it, could be roughly reduced to the following

Page  -8-

sentiment: while there is no specific piece of evidence
Petitioner can point to to show that he was not apprehended in
the bathroom while being in possession of marijuana, the entirety
of the actions of the prison officials during that day suggested
that the physical (i.e., the evidence in the forms of three packs
of leafy substance) was unduly "added" by the prison officials --
rather than legitimately obtained -- upon their preparation and
submission of the incident report to the DHO  See generally
Docket Entry No. 11, at 2-5, and Docket Entry No. 15.  For
instance, Petitioner asserts that -- *right after* being
apprehended at the bathroom -- he was escorted by the officers to
his and Coleman's cell, and the cell was searched, and – during
that search - the officers: (a) placed *all* items that were
confiscated from Petitioner just minutes ago in Petitioner's and
Coleman's full view (and these items were limited to only books
of stamps, altered battery and rolling paper); and (b) stated to
Petitioner – also in Coleman's presence – that Petitioner would
be charged with infractions related only to *those* specific items
(i.e., the officers discussed disciplinary sanctions related to
an inmate's possession of the items that were in Coleman's view
and did not mention anything about sanctions applicable to an
inmate's possession of controlled substance).  See Docket Entry
No. 11, at 3.  Analogously, Petitioner asserts that the fact that
he was not being placed in confinement right after his bathroom

search and his cell search – but being, instead, released (also in Coleman's presence) into general population – was at dire odds with the typical prison practice where an inmate apprehended in possession of controlled substance is usually subjected to immediate segregation.  See id.  In light of these and similar assertions, Petitioner's position can be reduced to: (a) a statement that the prison official's facts "just do not add up," and Coleman's testimony would be able to reflect on the aspects directly relevant to Petitioner's bathroom search; and (b) an expression of Petitioner's generic suspicion that his prison officials produced a complex chain of false accounts being motivated by pecuniary interests and mutual bonds.  See generally, Docket Entry No. 15.

## II.  HABEAS REVIEW AND HABEAS REMEDY

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. . . .  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the

Constitution that are of general application."  Wolff, 418 U.S.
at 556.

A liberty interest protected by the Due Process Clause may
arise from either of two sources: the Due Process Clause itself
or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460,
466 (1983); Asquith v. Department of Corrections, 186 F.3d 407,
409 (3d Cir. 1999).  Where the government has created a right to
good time credits, and has recognized that a prisoner's
misconduct authorizes deprivation of the right to good time
credits as a sanction,[4] "the prisoner's interest has real
substance and is sufficiently embraced within Fourteenth
Amendment 'liberty' to entitle him to those minimum procedures
appropriate under the circumstances and required by the Due
Process Clause to insure that the state-created right is not
arbitrarily abrogated."  Wolff, 418 U.S. at 557.  Thus, a
prisoner is entitled to an impartial disciplinary tribunal, see
Wolff, 418 U.S. at 570-71; and prison officials must also provide
a prisoner facing disciplinary sanctions with: (1) a written
notice of the charges at least 24 hours prior to any hearing, (2)
an opportunity to call witnesses and presented documentary

---

[4]  The Constitution itself does not guarantee good time
credits for satisfactory behavior in prison. Congress, however,
has provided that federal prisoners serving a term of
imprisonment for more than one year, other than a term of
imprisonment for the duration of the prisoner's life, may receive
credit toward the service of their sentence based upon their
conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

evidence in his defense when permitting him to do so will not be

unduly hazardous to institutional safety or correctional goals,

and (3) a written statement by the factfinders as to the evidence

relied on and the reasons for the disciplinary action.  See id.,

418 U.S. at 564-66.  Finally, due process requires that findings

of a prison disciplinary official be supported by "some evidence"

in the record.  See Superintendent, Massachusetts Correctional

Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985);

Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme

Court guided:

> The fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have *some basis* in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other
> standard greater than some evidence applies in this
> context.

Hill, 472 U.S. at 456 (internal citations omitted, emphasis

supplied).  Hence, the "some evidence" requirement is violated

only if a disciplinary sanction is rendered without any factual

basis or if the entire factual basis is false.  Cf. Williams v.

Federal Bureau of Prisons, 85 Fed. App'x 299, 303 (3d Cir. 2004)

(noting, without endorsement, the holding of in Paine v. Baker,

595 F.2d 197, 201 (4th Cir.1979), that "[i]n certain limited

circumstances a claim of constitutional magnitude is raised where

a prisoner alleges (1) that information is in his file, (2) that

the information is false, and (3) that it is relied upon [by an

administrative body] to a constitutionally significant degree [and to the petitioner's detriment]").

However, and contrary to what appears to be Petitioner's perception, even if a federal court determines that an inmate's due process rights were violated during an administrative hearing, the federal court does not conduct its own "trial" superceding a defective administrative proceeding: in such case, the proper remedy is a curative administrative hearing conducted in accordance with due process requirements (only if the administrative body expressly fails to comply with a judicial order directing new and procedurally correct hearing, such failure gives basis to the court's further intervention, e.g., by means of holding an in-court hearing or directing the administrative body to correct the prison term of the affected inmate). See, e.g., Mickens-Thomas v. Vaughn, 355 F.3d 294 (3d Cir. 2004); Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 631 (D.N.J. 2008) ("The only remedy the court can give is to order the [administrative body] to correct the abuses or wrongful conduct within a fixed period of time") (quoting Billiterri v. United States Board of Parole, 541 F.2d 938, 943-44 (2d Cir. 1976), and citing Furnari v. United States Parole Comm'n, 531 F.3d 241 (3d Cir. 2008)); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005) (pointing out that a procedurally proper curative administrative proceeding might yield a substantive determination

identical to that reached as a result of a procedurally defective administrative proceeding); <u>Howard v. United States Bureau of Prisons</u>, 487 F.3d 808 (10th Cir. 2007) (remanding the case for further proceedings envisioning, <u>inter</u> <u>alia</u>, a curative administrative hearing).

**III. DEFICIENCY OF PETITIONER'S ADMINISTRATIVE PROCEEDINGS**

Here, Respondent's position is correct in terms of the legal standards asserted, and Respondent's application of those standards to the bulk of administrative findings is also correct. However, Respondent unduly conflates various violations examined during Petitioner's administrative hearing into one abstract "violation" and, in addition, unduly compartmentalizes multiple due process requirements instead of reading these requirements jointly.

In the instant matter, Petitioner was sanctioned for a number of *different* violations, e.g., for possession of excessive amount of stamps, for alleged possession of controlled substance, etc. Although the parties' submissions do not reflect on the particular sanction imposed with regard to each particular violation, it appears certain that Petitioner's sanctions for these offenses were different. Consequently, while Petitioner's sanctions based on, e.g., his possession of excessive amount of stamps might have been imposed in full compliance with the requirements of due process, the sanctions imposed with regard to

his alleged possession of controlled substance might have been
faulty from the due process point of view.

### A. Sanctions Related to Excessive Possession of Stamps

Here, while Petitioner asserts that he was apprehended in
the bathroom being in possession of only some of his stamps,
Respondent is entirely correct that the very fact of Petitioner's
possession of all his excessive stamps (that is, the stamps found
on his person during the bathroom search, plus the stamps found
in his possession during the following cell search) provided the
evidentiary basis for the "some evidence" required for the
Court's finding that Petitioner's due process rights were not
violated as to that disciplinary misconduct.  Moreover,
Petitioner's assertion (that he requested but was denied an
opportunity to call Coleman as his witness during Petitioner's
administrative proceedings) does not alter the Court's analysis
since the amount of stamps Petitioner concedes having in his
possession (i.e., on his person and in his cell) qualifies as a
basis for imposition of these particular sanctions Petitioner
received with regard to that violation.

### B. Sanctions Related to Possession of Marijuana

In contrast, the imposition of sanctions resulting from the
administrative finding that Petitioner was in possession of a
controlled substance does not appear in compliance with the
requirements of due process.  These sanctions (or, to be more

precise, the "difference in sanctions" between those imposed <u>in toto</u> and those imposed on the grounds other than for Petitioner's alleged possession of a controlled substance) must be assessed under relevant tests *read jointly*.

Here, on one hand, the requirement of due process would be satisfied if "the findings of the prison disciplinary board [were] supported by some evidence in the record." <u>Hill</u>, 472 U.S. at 454-55; <u>Young</u>, 926 F.2d at 1402-03.  But this requirement is not limited to just the test articulated in <u>Hill</u> and <u>Young</u>: the inquiry also encompasses the holding of <u>Wolff</u>, 418 U.S. at 570-71, which mandates the prison officials to provide the disciplined inmate with, <u>inter alia</u>, an opportunity to call witnesses and to present documentary evidence.  Simply put, having these tests read jointly, a finding that an administrative sanction was supported by "some evidence" cannot be made without a determination that the sanctioning hearing officer duly credited such evidence with reliability upon being provided with testimonies of the pertinent witnesses presented by the inmate (and the documents the inmate wished to present).

Consequently, while Respondent is correct in observing that the hearing officer presiding over Petitioner's proceedings was right to find the testimonies of prison officials more credible than the statements made by Petitioner (and to impose administrative sanctions on the basis of these officers'

testimonies), see Docket Entry No. 12, at 12, the testimonies of these officers could not qualify as "some evidence" supporting the imposed sanctions unless the hearing officer also had an opportunity to consider the relevant testimony from Petitioner's witness.   In other words, the hearing officer presiding over Petitioner's administrative proceeding was simply not in the position to meaningfully assess the credibility of the testimonies provided to him by the prison officers who searched Petitioner in the bathroom unless this hearing officer was also exposed to offered-by-Petitioner Coleman's testimony (since, upon reflecting on Coleman's statements, the hearing officer was just as authorized to conclude that the testimonies of the prison officers were not credible).

That deficiency, in turn, puts in question Respondent's position that the testimonies of prison officials who searched Petitioner in the bathroom must necessarily qualify as "some evidence" needed for this Court's finding that no due process violation took place, i.e., this deficiency opens the door to the possibility that Petitioner was sanctioned not on the basis of "some evidence" but on the basis of evidence that might have been found – under proper due process circumstances – false (which transforms "some evidence" into no evidence at all).   Cf. Paine 595 F.2d at 201 (observing that "[o]ur concern is where the administrators rely [to a constitutionally significant degree] on

information which is false," and citing <u>Meachum v. Fano</u>, 427 U.S. 215, 228-29 (1976)).

Consequently, Petitioner's challenges to denial of an opportunity to call Coleman as his witness (and to present documentary evidence) could be deemed without merit only if Coleman's testimony and Petitioner's documentary evidence could have shed light on the issue of whether Petitioner was actually in possession of a controlled substance when he was apprehended by the prison officials in the bathroom.

Here, Petitioner failed to point to *relevant* documentary evidence that he sought and was denied an opportunity to present to his hearing officer: Respondent correctly points out that the materials Petitioner seeks to qualify as such "documentary evidence" were not in existence at the time of Petitioner's administrative hearing and/or had absolutely no bearing on the issues presented for consideration of Petitioner's hearing officer.

The same, however, cannot be said with regard to the prison officials' decision to deny Petitioner an opportunity to call Coleman as his witness.  As Petitioner duly observes, the record at bar shows no waiver of Petitioner's right to call Coleman; to the contrary, Petitioner's submissions made to his prison officials indicate Petitioner's continuous interest in introducing Coleman's testimony.  Moreover, as the Court noted in

its prior decisions, the task of locating Coleman and producing him for Petitioner's administrative hearing was certainly not insurmountable to Petitioner's prison officials, even if the Court were to adopt Respondent's position that Petitioner furnished his prison officials with only Coleman's last name, cell number and bed bank number (the position which Petitioner adamantly challenges, asserting that he provided, in addition to the above-listed data, Coleman's first name and prison number). Therefore, the Court cannot find that Petitioner waived his right to call Coleman as his witness, or that Petitioner's identification of Coleman was so insufficient that it effectively prevented the prison officials from locating Coleman and duly producing him for Petitioner's administrative hearing.

Consequently, Respondent's position could be warranted only if Coleman's testimony would have been wholly irrelevant to the finding that had to be made by Petitioner's hearing officer. Here, however, Petitioner's latest round of submissions clarifies that Coleman's testimony might have been quite relevant. Indeed, Petitioner explains that Coleman could have testified to being an eyewitness about: (a) the particular nature of items displayed by the prison officers as the particular items obtained during Petitioner's bathroom search; and (b) the fact of Petitioner's release into the general population immediately upon conclusion of Petitioner and Coleman's cell search (that immediately

followed Petitioner's bathroom search).  In addition, Coleman
could testify to the content of the statements made by the prison
officers during the cell search (e.g., to the alleged-by-
Petitioner statements that Petitioner would be sanctioned only on
the basis of his excessive possession of stamps, and – perhaps -
an altered battery).[5]  Hence, while Petitioner's hearing officer
had the right (and the obligation) to assess Coleman's
credibility and might have very well found that Coleman's
statements did not render the testimonies of the prison officials
not credible, the hearing officer was equally within his rights
to find otherwise.  And, in the latter scenario, the imposition
of sanctions upon Petitioner for possession of controlled
substance would not have been based on "some evidence," since it
would be based on evidence found not credible.  Therefore, the
aspect of Petitioner's administrative hearing related to his
alleged possession of a controlled substance was deficient, as to
Petitioner's due process rights, by denial of an opportunity to
call Coleman as Petitioner's witness.  This Court, consequently,
will grant Petitioner habeas relief as to *that particular*
administrative finding.

---

[5]  Hearsay is admissible in a disciplinary proceeding.  <u>See</u>,
<u>e.g.</u>, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 567-68, 94 S. Ct. 2963,
2980, 41 L. Ed. 2d 935 (1974); <u>Espinal v. Goord</u>, 2002 U.S. Dist.
LEXIS 12979, at *1 (S.D.N.Y. July 17, 2002); <u>Moore v. Selsky</u>, 900
F. Supp. 670, 674-75 & n.2 (S.D.N.Y. 1995), <u>aff'd</u>, 101 F.3d 683
(2d Cir. 1996).

In light of the foregoing, the Court will affirm the imposition of sanctions upon Petitioner with regard to the violations other than Petitioner's alleged possession of marihuana.  The Court will direct Respondent to provide Petitioner with a curative administrative hearing as to Petitioner's alleged possession of controlled substance.  The Court will direct the BOP to provide Coleman with a meaningful opportunity to submit his testimony[6] for consideration of the hearing officer presiding over Petitioner's curative administrative hearing.

**V.   CONCLUSION**

Based on the foregoing, the Court will deny Petitioner writ

---

[6] Petitioner initiated the instant matter while being confined at the F.C.I. Fort Dix, New Jersey.  On February 1, 2010, Petitioner informed the Clerk that Petitioner was transferred to the United States Penitentiary in Lompoc, California.  See Docket Entry No. 14.  Petitioner's witness, Robert Coleman (Register No. 07500-067) remains confined at the F.C.I. Fort Dix.  See <<http://www.bop.gov/iloc2/InmateFinder Servlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDN umber=07500-067>>.  The Court trusts that the BOP officials would find means for Petitioner's witness to have a *meaningful* opportunity to testify in Petitioner's curative administrative hearing.  Being mindful of the potential technical challenges associated with taking Coleman's testimony during Petitioner's curative proceedings (in the event Petitioner's curative proceedings are to take place in Lompoc), the Court will allocate Respondent additional time to conduct a curative hearing. Moreover, in the event the logistics of such a curative proceeding present an insurmountable challenge to the BOP (or a challenge posing a great expense, e.g., due to the BOP's inability to transmit Coleman's live testimony via video), Respondent shall notify the Court of Respondent's hardship, upon which the Court will consider resort to alternative methods of granting Petitioner the necessary habeas relief.

of habeas corpus as to Petitioner's challenges based on all sanctions imposed for the violations other than Petitioner's alleged possession of controlled substance.  The Court will grant Petitioner a limited writ of habeas corpus as to the sanctions imposed: (a) on the basis of Petitioner's alleged possession of controlled substance; and (b) as a result of the proceedings during which Petitioner sought but was denied an opportunity to call inmate Robert Coleman as his witness.  The habeas remedy will be limited to a curative administrative hearing during which inmate Coleman will be given an opportunity to provide testimony for consideration of the hearing officer conducting the curative hearing.  An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: June 16, 2010